IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 21, 2015 Session

**STATE OF TENNESSEE v. STANLEY BERNARD GIBSON**

**Appeal from the Criminal Court for Davidson County**
**No. 2009-B-1143     Monte Watkins, Judge**

————————————

**No. M2014-00598-CCA-R3-CD – Filed June 23, 2015**

————————————

The defendant, Stanley Bernard Gibson, was charged with the possession of but convicted of facilitation of possession of .5 grams or more of cocaine with intent to deliver within 1000 feet of a drug-free school zone and sentenced, as a Range II, multiple offender, to twelve years at 100%. On appeal, he argues that the evidence is insufficient to support the verdict and that the court erred in ordering that he serve his sentence at 100%. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

Richard C. Strong, Nashville, Tennessee (on appeal); and Paul Walwyn, Madison, Tennessee (at trial), for the Appellant, Stanley Bernard Gibson.

Herbert H. Slatery III, Attorney General and Reporter; Leslie E. Price, Senior Counsel; Glenn R. Funk, District Attorney General; and Antoinette Welch and John Zimmerman, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**FACTS**

Sergeant Brink Fidler of the Metropolitan Nashville Police Department ("MNPD") testified that he was assigned to the Twentieth Judicial District Drug Task Force. He said that his unit received a telephone call from the South Precinct Crime Suppression Unit that it had gone to a residence in Antioch after patrol officers had responded to a burglar

alarm. At the residence, officers found signs of a forced entry and, upon checking inside, found "twenty-something" pounds of marijuana in a pantry in the kitchen. Subsequently, Sergeant Fidler's unit was called to the scene and determined that an individual named Fontaine Cabels lived there. In the trunk of a vehicle inside the garage at the residence, officers found approximately $73,000 in cash. They discovered that the vehicle was registered to Mr. Cabels but at a different address, 506 Moore Avenue. He said that it was common for drug dealers to use the name of another for a place where drugs are kept or a vehicle in which they are transported. Officers believed that the 506 Moore Avenue location was Mr. Cabels' "stash house."

Sergeant Fidler said that a search warrant was obtained for the Moore Avenue residence, but before it was executed on November 4, 2008, he conducted a "pre-raid surveillance" of the residence and observed the defendant and his girlfriend, Tameka Scales, come in and out of the residence a few times. Ms. Scales eventually left in her vehicle. Through a glass storm door, he saw the defendant sitting on a couch. Later, when officers executed the warrant, the defendant was standing "just inside the front door." Another officer found the defendant's driver's license in a drawer in the bedroom. Two duffle bags, a blue one and a red and black one, were found inside the door, "inches" from where the defendant had been sitting. In the blue bag were a Frago Arms semi-automatic three-eighty pistol, digital scales, clothing, two bags of cocaine, and a blue bandana. Inside the red and black bag were papers, a notepad, a forty-four magnum Desert Eagle handgun, gloves, and the defendant's student identification for the International Academy of Design and Technology. Sergeant Fidler said that the larger bag of cocaine found in the blue duffle bag contained seven grams of powder cocaine, and the smaller bag contained 1.4 grams of crack cocaine. On the defendant's person, officers found a small bag of cocaine.

Detective Joseph Simonik of the MNPD testified that he was assigned to the Twentieth Judicial District Drug Task Force and that the search of the residence at 128 Cook Drive in Antioch yielded thirty-two pounds of marijuana and $73,640 in cash. Officers then obtained a search warrant for the 506 Moore Avenue residence. As officers were executing the warrant, Tameka Scales arrived with her infant child and was taken into custody. The defendant was determined to be the child's father.

David Kline testified that he was the manager of the Mapping Division for the Nashville Planning Department. He said he prepared a map showing that the Moore Avenue residence was within 1000 feet of Fall Hamilton Elementary School. Steve Keel testified he was the School Security Operations Manager for the Metro-Nashville Public Schools. He said that Fall Hamilton Elementary School was open in 2008 and had students from pre-kindergarten through fourth grade.

Tennessee Bureau of Investigation ("TBI") Special Agent/Forensic Chemist Denotria Patterson testified that the white powder found on the defendant's person contained cocaine and weighed 0.04 grams. The bag of rock-like substance found in the blue duffle bag weighed 1.4 grams and was cocaine-based, while the other bag contained 7.0 grams of powder cocaine. Following this testimony, the State rested its case-in-chief.

The defendant testified that, on November 4, 2008, he was living with his mother in Lavergne. Tameka Scales was his girlfriend, and they had an infant son together. He said he stayed at her residence "every now and then." On the day of his arrest, he had just arrived at her residence, where they argued; and she left in her vehicle. After she returned, officers arrived at the residence. When he was searched, he had on his person "a couple of hundred dollars and a little powder pack" that he used. His brother had given him the money to buy the defendant's son "stuff, like Walmart stuff." He denied that the weapons found at the residence were his. Additionally, he denied that he sold drugs or knew anyone who did.

On cross-examination, he said that the red and black bag at the house was his, but he had left it there previously. He said that police had planted his student identification and the Desert Eagle pistol in the bag. The defendant acknowledged that he was sentenced to twenty years in 2002 for the facilitation of second degree murder and to twelve years for aggravated robbery. The defense rested its case following his testimony.

## ANALYSIS

On appeal, the defendant argues that the evidence is insufficient to support the verdict and that the trial court incorrectly concluded that the defendant's conviction for facilitation required that he be sentenced at 100% in accord with the Drug-Free School Zone Act. We will review these claims.

### I. Sufficiency of Evidence

The Drug-Free School Zone Act provides: "A violation of [Tennessee Code Annotated] § 39-17-417 . . . that occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school, . . . shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation." Tenn. Code Ann. § 39-17-432(b)(1).

The defendant was convicted of facilitation of possession of .5 grams or more of cocaine with intent to deliver within 1000 feet of a drug-free school zone. As required, the indictment specifically alleged that the facilitation occurred within 1000 feet of the

type of school prohibited in the statute. See State v. Fields, 40 S.W.3d 435, 440 (Tenn. 2001).

A person facilitates a felony "if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Id. § 39-11-403(a). Under this statute, a defendant who has been "charged as a party may be found guilty of facilitation as a lesser included offense if the defendant's degree of complicity is insufficient to warrant conviction as a party." Id. § 39-11-403, Sentencing Comm'n Comments.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). The same standard applies whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

A criminal offense may be established entirely by circumstantial evidence. State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010). It is for the jury to determine the weight to be given the circumstantial evidence and the extent to which the circumstances are consistent with the guilt of the defendant and inconsistent with his innocence. State v. James, 315 S.W.3d 440, 456 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 380-81 (Tenn. 2011) (adopting the federal standard of review for cases in which the evidence is entirely circumstantial).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

4

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Taken in the light most favorable to the State, the proof showed that, as a search warrant was executed at 506 Moore Avenue in Davidson County, where items belonging to the defendant, including his driver's license and clothes, were found in the bedroom. Two bags of cocaine were found by officers in a bag close to where the defendant had been sitting, and he acknowledged that one of the bags was his. The bags also contained the defendant's student identification card, two handguns, digital scales, and gloves. The defendant had on his person a small amount of cocaine and $200 in cash. Sergeant Fidler testified that, to avoid smoking it, crack dealers usually do not keep large amounts of cocaine, while users have drug paraphernalia to smoke it, the latter of which was not found at the residence. Additionally, he testified that drug dealers are targets for robbery because they have both "product and cash," and "either [is] going to have a weapon near their drugs, or, at least, readily accessible, close by, to be able to defend their stash, . . . their money." While the defendant testified at trial that certain of the State's evidence had been "planted" by police officers, it is obvious by the verdict that the jury did not believe his explanation.

Based upon this evidence, we conclude that a reasonable jury could have determined that the defendant facilitated the possession of cocaine with intent to deliver in a drug-free school zone.

## II. Sentencing

As to sentencing, the defendant argues that the trial court erred in concluding that he was required to be sentenced pursuant to the Drug-Free School Zone act as a Range II offender to serve a twelve-year sentence at 100%. He asserts that "facilitation does not have the same level of culpability of a person convicted of the underlying possession," and that to do so is contrary to legislative intent.

"[S]entences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). Our supreme court has explicitly stated that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

In conducting its review, the trial court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Bise, 380 S.W.3d at 697-98. The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. See Tenn. Code Ann. § 40-35-114; see also Bise, 380 S.W.3d at 701; State v. Carter, 254 S.W.3d 335, 343 (Tenn. 2008). Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at

345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343. "[A]ppellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence." Id. at 345-46. "[They are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346.

Previously, this court has concluded that defendants charged with Drug-Free School Zone crimes, and convicted of facilitation of the alleged acts, are to be sentenced pursuant to that act:

> [I]n our view, the criminal attempt provisions apply to Drug Free School Zones crimes. If one attempts to sell cocaine within 1000' feet of a school, he is guilty of attempt to commit a section -417 crime, with an enhanced penalty under section -432. This same logic applies to facilitation. The trial court did not err in instructing the jury on attempt and facilitation crimes.

State v. Charles Lincoln Faulkner, No. E2006-02094-CCA-R3-CD, 2008 WL 2242531, at *16 (Tenn. Crim. App. June 2, 2008).

We, likewise, agree that the broad intent of the Drug-Free School Zone Act is that a defendant convicted of the facilitation of an offense proscribed by the act is to be sentenced according to its requirements. Thus, we conclude that this assignment is without merit.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE

7